UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | |
|---|---|
| In Re: | : CHAPTER 11 |
| W/L PROPERTIES L.L.C. | : |
| Debtor | : CASE NO.: 26-20444 |
| | : |
| | : AUGUST 17, 2026 |

# **CHAPTER 11 PLAN**

W/L Properties L.L.C., the Debtor-in-Possession (the "Debtor"), by and through its undersigned counsel, hereby submits to its creditors and other parties in interest this Chapter 11 Plan of reorganization (the "Plan") pursuant to Section 1121, *et seq*., Title 11 of the United States Code (the "Bankruptcy Code").

A more detailed discussion of this Plan and its implementation is found in the Disclosure Statement dated August 17, 2026 (the "Disclosure Statement"). This Plan should be read in conjunction with the Disclosure Statement. The Debtor urges creditors and parties in interest to consult with counsel. Parties in interest should not rely on any representation not contained in the Plan or Disclosure Statement in making a determination in voting (if applicable) on the Plan. A detailed discussion of the voting rights of creditors and other parties in interest is contained in the Disclosure Statement.

## **ARTICLE I- DEFINITIONS**

1.1 "Administrative Bar Date" means the first Business Day thirty (30) days after the Effective Date and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2 "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of

which is timely filed by the Administrative Bar Date, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.3 "Allowed Claim" means a Claim against the Debtor which (a) has been listed by the Debtor in the schedule of liabilities filed pursuant to §521(1) of the Code, unless it has been scheduled as disputed, contingent, or unliquidated; (b) which is reflected in a proof of claim filed by a creditor and to which the Debtor has not objected; or (c) which has been otherwise allowed by the Bankruptcy Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4 "Assets" means all property, real or personal, in which the Debtor has an interest.

1.5 "Avoidance Actions" means proceedings commenced under Chapter 5 of the Bankruptcy Code.

1.6 "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance, or rejection of the Plan.

1.7 "Bankruptcy Code" means Title 11 of the United States Code.

1.8 "Bankruptcy Court" means the United States Bankruptcy Court for the District of Connecticut.

1.9 "Bankruptcy Rules" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10 "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim against the Debtor. The Bar Date was July 30, 2026.

1.11 "Business Day" means any day except Saturday, Sunday, or any "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12 “Case” means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court, as captioned above.

1.13 “Cash” means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14 “Claim” means a claim as defined in § 101(5) of the Bankruptcy Code.

1.15 “Claimant” means a person holding a Claim against the Debtor.

1.16 “Class” means each class of claims or interests established and set forth in Article II of the Plan.

1.17 “Collateral” means any property or interest in property of the Debtor subject to a security interest or a lien to secure the payment or performance of a claim, which security interest or lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18 “Confirmation” means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19 “Confirmation Date” means the date on which the confirmation Order is entered by the Bankruptcy Court.

1.20 “Confirmation Hearing” means the hearing under § 1128 of the Bankruptcy Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as such hearing may be continued from time to time.

1.21 “Days” shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.22 “Debtor” means W/L Properties L.L.C.

1.23 "Disclosure Statement" means the Disclosure Statement filed or to be filed by the Debtor in connection with this Plan, as amended, if applicable.

1.24 "Disputed Claim" means a Claim:

(a) Which is listed as a disputed or contingent claim in the Debtor's Schedules as filed or amended, or

(b) Which is listed as disputed under any provision of this Plan, or

(c) As to which a proof of claim was filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.25 "Effective Date" means the closing date on the sale of the Debtor's commercial real property *i.e.*, 8.49 acres located at 1379 Farmington Avenue, Bristol, Connecticut a/k/a "The Shoppes at Larson Farm" pursuant to the Bankruptcy Court's adjudication of a motion to approve the sale of such commercial real property and/or a motion to disburse the proceeds of such sale, as applicable.

1.26 "Equipment" means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessories thereto and all software related thereto, including software that is embedded in and is part of said Equipment.

1.27 "Estate" means the bankruptcy estate of the Debtor.

1.28 "Executory Contracts" means all contracts, including unexpired leases, to which the Debtor was a party on the Petition Date, and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.29 "Final Decree" means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.30 "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket in this case that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.31 "Inventory" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, excluding any Equipment.

1.32 "Lien" has the meaning set forth in 101(37) of the Code.

1.33 A "Material Default" of the Debtor shall occur if (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor 's attorney a written notice of Debtor's default ; and (3) Debtor fails within 21 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.34 "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.35 "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.36 "Petition Date" means May 1, 2026, the date on which the voluntary petition for relief under Chapter 11 of the Code was filed by the Debtor.

1.37 "Plan" means this Plan, as it may be amended from time to time.

1.38 "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.39 "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.40 "Professional" means any attorney, accountant, appraiser, consultant, financial advisor, or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.41 "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

1.42 "Proof of Claim" means a proof of claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.43 "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.44 "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.45 "Secured Claim" means any Claim, debt, or demand against the Debtor as determined in accordance with § 506(a) of the Code, which is secured by a properly perfected

mortgage, deed of trust, lien, pledge, or security interest in, or right of set off against, any Property of the Debtor, but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.46 "Unexpired Lease" means a lease of personalty or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.47 "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.48 "Unsecured Claim" means any unsecured debt, demand, or claim other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

**ARTICLE II - CLASSIFICATION OF CLAIMS AND INTERESTS**

Creditors holding Claims or Equity Interests in Classes A through D are impaired under the Plan and are eligible to vote to accept or reject the Plan. Unclassified administrative expense claims are unimpaired under the Plan and are not entitled to vote with respect to the acceptance or rejection of the Plan.

2.1 Administrative Expense Claims pursuant to Bankruptcy Code § 507(a)(2)(Unclassified): These claims consist of the administrative expense claim of the Debtor's bankruptcy counsel, Edward P. Jurkiewicz, Esq. of Lawrence & Jurkiewicz, LLC, its special counsel, Thomas P. Moriarty, Esq. of Thomas P. Moriarty, LLC, Jones Lang LaSalle Americas, Inc. d/b/a JLL Capital Markets, its commercial real estate advisor, all as allowed under § 503(b)(4) of the Bankruptcy Code, claims of other professionals, if any, whose employment is approved by

the Bankruptcy Court hereafter, and quarterly fees, if any, owed to the United States Trustee pursuant to 28 U.S.C § 1930(a)(6).

2.2 Class A (Secured Claim of the City of Bristol):

Class A consists of the allowed secured claim of the City of Bristol pursuant to a Certificate of Tax Lien recorded against the Debtor's commercial real property on March 11, 2025. Pursuant to Claim # 3-1 the amount of the City of Bristol's prepetition claim is $149,738.75.

2.3 Class B (Secured Claim of Manufacturers and Traders Trust Company):

Class B consists of the allowed secured claim of Manufacturers and Traders Trust Company ("M&T Bank") arising from its Amended and Restated Mortgage Note dated March 13, 2013 in the principal amount of $10,000,000.00 with a maturity date of April 1, 2023 which amended a pre-existing mortgage note dated November 14, 2007 in the original principal amount of $12,500,000.00. Pursuant to Claim # 1-1 the amount of M&T Bank's allowed prepetition claim is $8,705,330.97.

2.4 Class C (Secured Claim of Manufacturers and Traders Trust Company):

Class C consists of the secured claim of Manufacturers and Traders Trust Company ("M&T Bank") arising from its Mortgage Note dated November 20, 2019 in the original principal amount of $1,421,600.00 which also bore a maturity date of April 1, 2023. Pursuant to Claim # 2-1 the amount of M&T Bank's allowed prepetition claim is $799,120.73.

2.5 Class D (General Unsecured Claims):

Class D consists of the following general unsecured claims:

a-) The unsecured claim of Stephen Wasley in the amount of $800,013.00;

b-) The unsecured claim of USA Mechanical & Energy Services in the amount of $21,206.81; and

c-) The unsecured claim of Cristina McIntyre in such amount as may be allowed by the bankruptcy court.

2.6 Class E (Equity Interests):

Class E consists of the equity interests of Stephen C. Larson (25.25%), Ralph L. Larson (25.25%), Stephen C. Wasley (21.936%), Karen Wasley (13.016%), JoAnn Larson (6.47%), Dana Wasley (2.017%), Noah Wasley (2.017%), Peter Wasley (2.017%), and Robin Wasley (2.017%).

**ARTICLE III- TREATMENT OF CLAIMS AND INTERESTS**

As set forth in the Disclosure Statement, the Debtor's commercial real property, consisting of approximately 8.49 acres located at 1379 Farmington Avenue, Bristol, Connecticut a/k/a "The Shoppes at Larson Farm", shall continue to be listed for sale by Jones Lang LaSalle Americas, Inc. d/b/a JLL Capital Markets (hereafter, "JLL"), pursuant to the terms of its Exclusive Listing Agreement (Doc 90) until December 31, 2026 (the "Marketing Period"). The Debtor may modify the listing price on the recommendation of the Broker after the first 30 days on the market. If the subject property is not under contract (with a non-refundable deposit) at the conclusion of the Marketing Period, the Debtor will promptly, and on an expedited basis if necessary, file a motion to employ Maltz Auctions, Inc., d/b/a Maltz Auctions ("Maltz") to auction the subject property and shall request that the bankruptcy court enter an order approving a proposed auction process and bid procedures. Such auction, if any, shall occur not later than April 15, 2027, and shall be required to close on or before May 31, 2027, following the entry of an order by the bankruptcy court approving the sale. Upon approval of the sale, whether a private sale or by auction, all sale proceeds shall be applied as specified in Section J ("Classification and Treatment of Claims") below without further Order of the Bankruptcy Court, net of (i) the commission of the Broker, if applicable; (ii) adjustments for real estate taxes, including the satisfaction of any outstanding tax

liens on the Properties; (iii) typical charges to the seller in a real estate transaction in Hartford County for the payment of recording fees, conveyance taxes and similar charges; and (iv) reasonable legal fees to special counsel for the Debtor related to the real estate closing itself, which fees shall be held in escrow pending approval of his fee application. Until such time as the sale is approved, the Debtor shall continue to operate the Property in the ordinary course of its business and shall maintain all insurance and continue to pay real estate taxes and assessments as such taxes and assessments come due.

Except as specifically indicated herein, the following claims and interests shall be paid in order of priority on the Effective Date from the net closing proceeds from the sale of the commercial real estate and from the Debtor's remaining cash, if any, following the sale.

3.1 Administrative Expense Claims pursuant to Bankruptcy Code § 507(a)(2)(Unclassified):

Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash, by the Debtor on the Effective Date. Notwithstanding the foregoing, after confirmation, until entry of a final decree, dismissal or conversion, or until the case is closed, the Debtor shall continue to file timely monthly operating reports and be responsible for timely payment of quarterly fees payable to the United States Trustee incurred pursuant to 28 U.S.C. § 1930(a)(6) as they come due.

3.2 Class A (Secured Claim of the City of Bristol):

Class A shall receive the value of its secured claim through the Plan and shall retain the lien on its collateral for the full amount of its secured claim. Class A will be paid in full on the Effective Date, together with statutory interest equal to 18% per annum accruing since the Petition Date. This class is unimpaired and is not entitled to vote.

3.3 Class B (Secured Claim of Manufacturers and Traders Trust Company):

Class B shall receive the value of its secured claim over the course of the Plan and shall retain the lien on its collateral for the full amount of its secured claim. Pursuant to Claim # 1-1 the amount of M&T Bank's allowed prepetition claim is $8,705,330.97. M&T Bank's Class B claim shall be paid from the net sales proceeds of the subject commercial real property on the Effective Date, whether by private sale or by auction if necessary. M&T Bank's Class B claim shall be reduced by applying the adequate protection payments received from the Debtor first to accrued interest at the non-default rate specified in the note, then to principal. To the extent that the net sales proceeds exceed the total amount of M&T Bank's Class B claim it shall be entitled, as an oversecured creditor, to receive its reasonable attorney's fee incurred in connection with this bankruptcy proceeding. If the net sales proceeds are not sufficient to pay M&T Bank's Class B claim in full, M&T Bank shall consent, notwithstanding, to the closing of such sale and shall execute such documents as are necessary to allow such closing to occur, including, without limitation, releases of its mortgage and related security agreements to the extent they encumber the subject property. Any such releases shall not constitute a waiver or release of any guarantor for any remaining deficiency arising from the above-referenced Amended and Restated Mortgage Note. The balance of M&T Bank's Class B claim, if any, shall be paid from the Debtor's remaining cash after all administrative claims are paid in full. This class is impaired and is entitled to vote.

3.4 Class C (Secured Claim of Manufacturers and Traders Trust Company):

Class C shall receive the value of its secured claim over the course of the Plan and shall retain the lien on its collateral for the full amount of its secured claim. Pursuant to Claim # 2-1 the amount of M&T Bank's allowed prepetition claim is $799,120.73. M&T Bank's Class C claim shall be paid from the net sales proceeds of the subject commercial real property on the Effective

Date, whether by private sale or by auction if necessary. To the extent that the net sales proceeds exceed the total amount of M&T Bank's Class C claim it shall be entitled, as an oversecured creditor, to receive its reasonable attorney's fee incurred in connection with this bankruptcy proceeding. If the net sales proceeds are not sufficient to pay M&T Bank's Class C claim in full, M&T Bank shall consent, notwithstanding, to the closing of such sale and shall execute such documents as are necessary to allow such closing to occur, including, without limitation, releases of its mortgage and related security agreements to the extent they encumber the subject property. Any such release shall not constitute a waiver or release of any guarantor for any remaining deficiency arising from the above-referenced Amended and Restated Mortgage Note. This class is impaired and is entitled to vote.

3.5 Class D (General Unsecured Claims):

Each member of Clas D shall receive a dividend on the Effective Date equal to the *pro rata* share of the remaining net sale proceeds from the subject real property and from the Debtor's remaining cash after all administrative claims and class A, B and C claims are paid in full. This class shall receive no dividend unless all administrative claims and class A, B and C claims are paid in full. This class is impaired and is entitled to vote.

3.6 Class E (Equity Interests):

This class shall receive no distribution under the Plan unless and until all administrative claims and class A, B, C, and D claims are paid in full. In that event each member of this class shall receive a dividend on the Effective Date equal to his or her *pro rata* share of the total equity interests from the remainder of the net closing proceeds and remaining cash. If the Plan is consummated by the sale of the Debtor's commercial real property, then this class shall not retain their equity interests. This class is impaired and is entitled to vote.

## ARTICLE IV (EXECUTORY CONTRACTS AND UNEXPIRED LEASES)

4.1 The following unexpired leases and service contracts shall be assumed as of the Effective Date:

a-) The ground lease of Pepper Dining Inc.;

b-) The lease of Starling Physicians, PLLC;

c-) The ground lease of Sybra Inc.;

d-) The landscaping contract of Pro Excavation;

e-) The service contract of Summit Fire & Security, LLC;

f-) The service contract of Superior Sweeping; and

g-) The service contract of USA Mechanical & Energy Services.

4.2 Any other prepetition executory contracts or unexpired leases in effect as of the Effective Date and not specifically reinstated, assumed, or rejected will be deemed rejected as of the Effective Date.

## ARTICLE V-EXECUTION OF PLAN

5.1 The Debtor shall fund the Plan from the sale of its commercial real property and from its remaining cash on the Effective Date. Except as otherwise indicated herein, the Debtor shall retain the assets of the estate and shall pay its creditors the amounts set forth in this Plan and in the accompanying Disclosure Statement. Consistent with the provisions of the Plan and subject to any releases provided herein, the Debtor reserves its right to begin or continue any adversary proceeding permitted under the Code and Rules, to collect any debts, or to pursue claims in courts of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party,

including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor shall not bar any claim by the Debtor against the holder of such claim.

**ARTICLE VI- RETENTION OF JURISDICTION**

6.1 Following the Confirmation Date, the Court shall retain jurisdiction over the Debtor, the Debtor's operations and assets for the following purposes until the Court enters an Order closing the case:

A. To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtor's right to object to such claim in whole or in part;

B. To hear and determine all adversary proceedings and contested matters;

C. To allow and approve or disapprove any administrative expenses not previously allowed;

D. To determine and resolve questions concerning the existence of defaults under the Plan;

E. To modify the Plan pursuant to § 1127(b) of the Code;

F. To correct any defect, to cure any omission, or to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G. To issue any Order necessary to carry out the Plan.

**ARTICLE VII- AMENDMENT OR MODIFICATION OF PLAN**

7.1 The Debtor may submit amendments to the Plan at any time before Confirmation pursuant to § ll27(a) of the Code and may also submit modifications thereafter in accordance with § ll27(b).

## ARTICLE VIII- CLOSING OF THE CASE

8.1 Upon substantial consummation of the Plan, the case shall be closed, but shall be subject to reopening to enforce the terms of this Plan.

## ARTICLE IX- MISCELLANEOUS

9.1 No creditor may take any collection action against Debtor or property of the estate or of the Debtor so long as Debtor is not in material default in performing its obligations to such creditor under the Plan.

9.2 On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

9.3 Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

9.4 The Debtor shall file objections to claims by the date the Debtor serves notice of the Disclosure Statement and Plan upon creditors.

Dated at Torrington, Connecticut this 17th day of August 2026.

DEBTOR,

By: /s/ Edward P. Jurkiewicz_____________

Edward P. Jurkiewicz ct04779
Lawrence & Jurkiewicz, LLC
932 East Main Street, Suite 1
Torrington, CT 06790
(860) 626-1333 (telephone)
(860) 626-1305 (fax)
Federal Bar Number ct04779

DEBTOR

By: /s/ Stephen C. Larson

Stephen C. Larson
Member

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | |
|---|---|
| In Re: | : CHAPTER 11 |
| W/L PROPERTIES L.L.C. | : |
| Debtor | : CASE NO.: 26-20444 |
| | : |
| | : AUGUST 17, 2026 |

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 17, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated at Torrington, Connecticut this 17th day of August 2026.

/s/ Edward P. Jurkiewicz_____________

Edward P. Jurkiewicz ct04779
Lawrence & Jurkiewicz, LLC
932 East Main Street
Torrington, CT 06790
(860) 264-1551 (telephone)
(860) 677-5005 (fax)
Federal Bar Number ct04779
ed.lawjur@gmail.com